IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THOMAS POWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-CV-3306 |
| | ) | |
| JAMES CHRISTOPHER CLAYTON, | ) | |
| JOSEPH HANKINS, | ) | |
| GREGG SCOTT, and | ) | |
| FORREST J. ASHBY, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Facility pursuant to the Illinois Sexually Violent Persons Act. He pursues constitutional claims for denial of access to the court and retaliation for the exercise of his First Amendment right to pursue lawsuits and file grievances. One of Plaintiff's other pending cases in this District, 13-cv-3097, was consolidated with this case because the claims are similar.

Before the Court is Defendants' motion for summary judgment. For the reasons explained below, summary judgment is granted on

Plaintiff's claim for denial of access to the courts. Summary judgment is denied on Plaintiff's retaliation claims.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## Discussion

**I. Summary judgment is granted to Defendants on Plaintiff's claim for denial of access to the courts. Plaintiff has**

**not shown how the alleged shortcomings of the legal resources at Rushville impeded Plaintiff's legal pursuits.**

The constitutional right to access the court is not "an abstract freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 351 (1996).  The right to access the courts means the right to pursue nonfrivolous claims, not the right to various legal resources.  See Ortloff v. United States, 335 F.3d 652, 656 (7th Cir. 2003)("[A] right to access-to-courts claim exists only if a prisoner is unreasonably prevented from presenting legitimate grievances to a court; various resources, documents, and supplies merely provide the instruments for reasonable access and are not protected in and of themselves.")(*abrogated on other grounds as recognized in* Parrott v. U.S., 536 F.3d 629, 635 (7th Cir. 2008)). Thus, an access claim is viable only if a plaintiff suffered an "actual injury" from the inability to pursue a nonfrivolous claim. Lewis, 518 U.S. at 351; In re Maxy, 674 F.3d 658, 660 (7th Cir. 2012); May v. Sheahan, 226 F.3d 876, 883 (7th Cir. 2000).  There must be a "connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." Ortiz v. Downey, 561 F.3d 664, 671

(7th Cir.2009) (internal quotation and citation omitted).  "Without a tenable argument to pursue . . . , [a plaintiff] cannot show actual prejudice resulting from denial of access to the law library."  McCree v. Grissom, 657 F.3d 623, 624 (7th Cir. 2011).

Plaintiff identifies six cases in which he claims he suffered injury because of Rushville's lack of legal resources.  (Pl.'s Aff. paras. 82-87.)

One of the six cases identified by Plaintiff is his state civil detention proceedings (12MR419, Winnebago County).  Plaintiff has a statutory right to appointed in counsel in that case.  725 ILCS 207/25(c)(1).  An individual's right to access the courts is satisfied by the appointment of counsel.  U.S. v. Sykes, 614 F.3d 303, 310 (7th Cir. 2010).  That Plaintiff has chosen to proceed pro se in his detention proceeding does not require Defendants to supply the legal resources for Plaintiff to do so.  See U.S. v. Sykes, 614 F.3d 303, 311 (2010)("'The rule is that [the defendant] has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up.'")(*quoting* United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000)(brackets in Sykes).

Plaintiff does not explain how the alleged lack of resources is connected to the other five cases' outcomes.

For example, in Powers v. Chandler, 10-cv-50097 (N.D. Ill.), summary judgment was granted to Defendants in various orders and affirmed on appeal. Plaintiff contends that Defendants Mesrobian and Carter were dismissed "based on a discovery violation," but the docket in that case shows that Defendant Carter was dismissed because Plaintiff failed to exhaust his administrative remedies when he did not file a timely appeal to the Administrative Review Board. (6/22/11 order, 10-cv-50097.) Defendant Mesrobian (who was deceased) was dismissed when Plaintiff filed an amended complaint which did not include Mesrobian as a Defendant. (3/12/12 Amended Compl., 10-cv-50097.) Plaintiff does not explain how the alleged lack of legal resources at Rushville had anything to do with the outcome of this case.

Similarly, Plaintiff asserts that he suffered legal injury in a case called Powers v. Anglin, which Plaintiff described in his deposition as a mandamus action in the Illinois Supreme Court regarding

Plaintiff's mandatory supervised release. (Pl.'s Dep. p. 17-18.)[1] Plaintiff does not explain how the dismissal of that case was caused by his lack of legal resources. Powers v. Godinez, another state circuit court mandamus action filed by Plaintiff (Pl.'s Dep. 22) was also dismissed, but Plaintiff does not explain how that denial had anything to do with the lack of legal resources. 2012-MR-322 (Sangamon County)(4/20/12 Order dismissing case as "frivolous and without merit."). Plaintiff describes the case Powers v. Powers as an order of protection case filed by Plaintiff's ex-wife which was eventually dismissed. (Pl.'s Dep. 24-27.) Plaintiff does not explain how the dismissal of a case filed against him caused him any injury. Lastly, Plaintiff identifies an Illinois Court of Claims case which was dismissed due to Plaintiff's failure to exhaust his available remedies. (Pl.'s Dep. 29-30.) Plaintiff seems to assert that he did not know he had to exhaust because Plaintiff cannot access Illinois Court of Claims cases in Rushville. However, the exhaustion requirement is in the Illinois Statutes, 705 ILCS 505/25, which were accessible

---

[1] The transcript states "Powers v. England," but the parties appear to be referring to "Powers v. Anglin." The Court has included the case numbers of the cases referred to by Plaintiff only where the Court was able to find the docket sheet online.

through the Westlaw CD-ROM provided at Rushville.  (Shelton Aff. para. 4.)

In short, Plaintiff has not explained how the alleged inadequacies of the legal resources at the facility detrimentally affected any of his cases.  See Childress v. Scott, 2017 WL 213176 (7th Cir. 2017)(not reported in Federal Reporter)(affirming summary judgment on claim of inadequate law library and not providing law clerks at Rushville where the plaintiff  "did not demonstrate that the prison library's shortcomings hindered or prevented him from pursuing a potentially meritorious claim.")

**II.  Summary judgment is denied on Plaintiff's retaliation claims.**

Defendants argue that *res judicata* bars the retaliation claims against Defendant Clayton, citing Judge Bruce's grant of summary judgment to the defendants in Powers v. Clayton, et al., 13-cv-3057 (C.D. Ill.), another retaliation case.

The claims in 13-cv-3057 arose from Clayton's interview of Plaintiff on December 16, 2012, a behavior report written on January 3, 2013 against Plaintiff for providing false information on staff and a January 23, 2013 search of Plaintiff by Clayton.

(6/22/15 Order, 13-cv-3057, d/e 87.)  *Res judicata* bars Plaintiff from pursuing claims arising from these incidents.

However, Judge Bruce specifically stated that he was not ruling on other incidents Plaintiff had brought up in his deposition.  Id. pp. 5-6.  Defendants are correct that *res judicata* also bars claims that could have been brought in a prior action, but the claims must arise from the same set of occurrences.  Walczak v. Chicago Bd of Educ., 739 F.3d 1013, 1014 (7th Cir. 2014)(identity of cause of action is whether claims arise from "single group of operative facts, regardless of whether they assert different theories of relief.")(quoted cites omitted).  Here, though the claim is retaliation just like in many of Plaintiff's other cases, the alleged retaliatory acts are different from those in 13-cv-3057.  *Res judicata* does not bar litigation of incidents which were not the subject of 13-cv-3057.

Plaintiff's retaliation claim survives summary judgment if he has evidence that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  Gomez v. Randle, 680 F.3d 859, 866

(7th Cir. 2012)(quoted cite omitted). If Plaintiff makes this prima facie showing, Defendants must show that the adverse action would have occurred anyway. Mays v. Springborn, 719 F.3d 631, 633 (7th Cir. 2013). If Defendants meet this burden, then Plaintiff must show that Defendants' proffered reason is pretextual, that is, a lie. Thayer v. Chiczewski, 705 F.3d 237, 250-51 (7th Cir. 2012).

Plaintiff lists many adverse actions spanning from 2012 through 2014 which he believes were taken in retaliation for Plaintiff's grievances and lawsuits. These adverse actions include shakedowns, disciplinary reports, guilty findings on disciplinary reports, interrogations, confiscation of discovery disks, removing Plaintiff from gym and from his ADA compliant cell, threats, placement in "special management," and movement of Plaintiff to a different room to prevent Plaintiff's legal collaboration with another resident.

Plaintiff's evidence of retaliatory motive includes a purported admission by Defendant Hankins that, "I can do what I want with you," and, "Nobody is going to touch me." (Pl.'s Dep. p.77.) Plaintiff also avers that Defendant Clayton harassed, threatened, and interrogated Plaintiff for helping other residents with legal work or

pursuing Plaintiff's own legal work. Plaintiff asserts that before one shakedown, Defendant Clayton said, "You want to be a lawyer, you want to file lawsuits then get used to the Fourth Amendment and getting shook down . . . ." (Pl.'s Aff. para. 47, d/e 54-3.)[2] Plaintiff also asserts in his response that Defendant Clayton promised to make Plaintiff's life miserable if Plaintiff did not stop helping other residents with their legal matters. (Pl.'s Resp. p. 10, d/e 54-2.) Plaintiff further avers that Defendant Scott does not allow residents to share legal materials or discuss legal matters and directs a shakedown of Plaintiff every week before Plaintiff attends his religious service, in order to check for legal materials. (Pl.'s Aff. paras. 73, 76.)

Defendants point out that they did not author the behavior reports, did not alone determine Plaintiff's guilt on those reports, and were not involved in many of the alleged retaliatory actions. Defendants also offer evidence that all of the actions taken against Plaintiff, whether by Defendants or others, were taken for legitimate reasons, not because of retaliatory motive, and would have been

---

[2] Plaintiff contends that Defendant Hankins told security guard Wilts to "continuously shake [Plaintiff] down and also told the guards to write Plaintiff behavior reports if Plaintiff talked about his CD, but those statements are inadmissible hearsay.

taken regardless of retaliatory motive.  The fact that Plaintiff files lawsuits and grievances does not mean that every adverse action taken against Plaintiff is motivated by retaliation for those lawsuits and grievances.  Shafer v. Kal Kan Foods, Inc., 417 F.3d 663, 664 (7th Cir. 2005)("*Post hoc ergo propter hoc*[3] is not a good way to establish causation.")  As for the Directors of the facility, Defendants Ashby and Scott have no general constitutional duty to take corrective action and were not required to believe Plaintiff's version of events.  *See* Soderbeck v. Burnett County, 752 F.2d 285, 293 (7th Cir. 1985)("Failure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior . . . .")

On the other hand, Plaintiff insists that Defendant Hankins and Clayton directed others to take the adverse actions because of Plaintiff's grievances and lawsuits, though his evidence seems to consist only of Defendants' purported admissions.  Plaintiff also contends that he informed Defendants Ashby and Scott of the alleged retaliation, but they took no action.  *See* Perez v. Fenoglio, 792 F.3d 768, 781–82 (7th Cir. 2015)("An inmate's correspondence

---

[3] *Post hoc ergo propter hoc* is a Latin phrase meaning "after this, therefore because of this."

to a prison administrator may ... establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation.")

After careful review of the summary judgment submissions, the Court concludes that granting summary judgment to Defendants on Plaintiff's retaliation claim would usurp the jury's role.  The Court is not to weigh evidence or assess credibility at this stage. Stokes v. Board of Educ. of the City of Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.")  Defendants' qualified immunity argument depends on ignoring the facts favorable to Plaintiff and accepting the Defendants' explanations for their actions, which the Court cannot do at this stage.  Accordingly, the case will be set for trial.

The Court notes for future discussion that Plaintiff's claim about the inability to share legal work or talk about legal work may best fit under a straight First Amendment free speech claim, rather

Page **12** of **15**

than a retaliation claim, but that issue will be addressed at the final pretrial conference.

On a separate matter, the Court is concerned that, given Plaintiff's lengthy litigation history and lack of merit on his access claim, Plaintiff may be using the judicial process for the improper purpose of harassing Defendants. Plaintiff is advised that the Court may assess costs against a losing party under Federal Rule of Civil Procedure 54, and, in fact, must do so unless a party has no ability to pay the costs now or in the future. Additionally, the Court is considering the possibility of deducting "points" from a resident's account if the resident loses a case and is unable to pay costs. Those are matters that will be addressed at the close of this case, if necessary.

**IT IS ORDERED:**

1. Plaintiff's motion for the appointment of counsel is denied (60). Plaintiff has substantial federal litigation experience. He has pursued twenty cases in the Central District, with nine still pending. He has also pursued cases in the Northern District and in state court. His pleadings are well-written and demonstrate a good understanding of the applicable law and of federal procedure.

Additionally, he has a high school degree and, at the time of his deposition, was pursuing a bachelor's degree in theology. He also owned his own businesses before his incarceration and detention. (Pl.'s Dep. 8-9.) He already has personal knowledge of many of the facts relevant to his claims and has been able to obtain relevant evidence during discovery. On this record, Plaintiff appears competent to proceed pro se in light of the relatively simple nature of his claims. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007).

2. Plaintiff's motion to strike Defendants' motion for summary judgment is denied (51).

3. Defendants' motion to strike Plaintiff's additional facts is denied (56). While Plaintiff does not cite the record in support of his additional facts, most of the additional facts are reiterations of Plaintiff's argument and response to Defendants' proposed undisputed facts.

4. Defendant's motion for summary judgment is granted in part and denied in part (48). Summary judgment is granted to Defendants on Plaintiff's access to courts claim. Summary judgment is granted to Defendants to the extent Plaintiff seeks

money damages against Defendants in their official capacities. Summary judgment is denied on Plaintiff's retaliation claims.

5. The jury selection and trial are scheduled for July 11-14, 2017, beginning at 9:00 a.m. each day.

6. The final pretrial conference is scheduled for June 12, 2017 at 10:00 a.m.

7. The parties may request a settlement conference with the Magistrate Judge if they believe another try at settlement could be productive.

8. The clerk is directed to issue a personal writ to secure Plaintiff's presence at the jury selection and trial.

9. The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.

ENTER: January 27, 2017

FOR THE COURT:

<u>s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE